IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES BAPTIST,

        Plaintiff,

v.

FORD MOTOR COMPANY,

        Defendant.

13 C 8974

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Plaintiff James Baptist filed a one-count Complaint in the Circuit Court of Cook County, Illinois alleging that his former employer, the Ford Motor Company, terminated his employment in retaliation for filing a workers' compensation claim in violation of Illinois common law. Ford removed the case to this Court and now moves for summary judgment. For the reasons below, the motion is granted.[1]

## STATEMENT OF FACTS

The following facts are undisputed unless expressly noted. Baptist began working at Ford on February 27, 2012. (Def. 56.1 ¶ 4). Baptist worked as a forklift operator in the Material Planning and Logistics Department. (*Id.* ¶ 6). A collective bargaining agreement governed the terms and conditions of Baptists employment with Ford. (*Id.* ¶ 5).

On April 10, 2012, Baptist injured his left wrist while operating a forklift. (*Id.* ¶ 10). While carrying a crate on the forks of the forklift, Baptist inadvertently "clipped" a pillar with

---

[1] In light of the grant of summary judgment in Ford's favor, Ford's motion for a protective order and to strike plaintiff's rebuttal damages expert (Dkt. No. 41) is dismissed as moot.

the crate. (*Id.* ¶ 9). Apparently, the collision caused the forklift to stop suddenly and caused Baptist to jam his left hand on the steering wheel of the forklift. (*Id.* ¶ 9). Baptist claims that he immediately reported the injury to his supervisor via text message and went to the medical department of the Ford facility. (PSAF ¶¶ 3-4).[2]. The parties agree that Baptist submitted a formal Injury/Accident Investigation Form on April 18. (Def. 56.1 ¶ 11; Dkt. No. 49-1 p. 14).

The filing of the Injury/Accident Investigation Form triggered the workers' compensation review process. Benefits Administrator Jessica Nawracaj investigated the claim. Nawracaj was not a Ford employee. She worked at Bartech, a company provides workers' compensation benefits administration services to Ford. (PSAF ¶ 14). Nawracaj interacted with Ford Plant Doctor Dr. Patricia Lewis during the review process. Both expressed skepticism regarding the veracity of Baptist's claim and frustration with Baptist's demeanor during the review process. At the conclusion of the investigation, Ford's worker's compensation fund paid for a single visit to a doctor and an MRI for Baptist. Ford denied further coverage (*Id.* ¶ 15). The parties are presently litigating the underlying workers' compensation claim before the Illinois Workers' Compensation Commission.

Baptist saw his personal orthopedic surgeon, Dr. William Heller on April 24, 2012. (Def. 56.1 ¶ 12). Dr. Heller issued a wrist brace for Baptist to wear and noted that Baptist could continue to perform his regular work duties while wearing the brace. (*Id.* ¶ 13). In late June, the

---

[2] The parties disagree about the exact process by which Baptist reported the accident, but their dispute is immaterial. Baptist claims that immediately following his shift on April 10 he went to Ford's Medical Department to report his injury. (PSAF ¶ 3). Baptist's shift ended at 4:30 a.m. and no doctors or nurses were present at the time. Baptist claims that he informed a medical employee named Mary of his injury. (*Id.*). Baptist also claims that he reported the injury to Sam Doutsas, his supervisor, via text message. (*Id.* ¶ 4). Ford claims that Baptist did not report the injury until April 18 when he submitted a formal Injury/Accident Investigation Form. (Def. 56.1 ¶ 11). The precise sequence of events is immaterial because it is not relevant to any element of Baptist's claim. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

pain in Baptist's left wrist worsened. On June 24, 2012 Baptist left work early to seek additional medical attention for his left wrist, though he did not visit a doctor until June 26. (Def. 56.1 ¶ 16). On that date, Baptist visited Dr. Heller again and Dr. Heller recommended surgery on Baptist's left wrist. (*Id.* ¶ 17). Dr. Heller recommended that Baptist be off work for 4-6 weeks following surgery, but wrote a note clearing Baptist to return to work effective July 2, so long as he did not lift or grip over five pounds with his left hand. (*Id.* ¶ 18; Dkt. No. 49-1 p. 44).[3] Dr. Lewis determined that the restriction did not implicate any activity necessary to operate a forklift cleared Baptist to return to work. (Def. 56.1 ¶ 21; Dkt. No. 49-4 p. 5). Because none of Baptist's work required lifting or gripping more than five pounds, Dr. Lewis removed the notation of the restriction from his employee file. Dr. Lewis never contacted Dr. Heller directly to speak about the restriction and Dr. Heller did not contact her to elaborate on it. (SMAF ¶¶ 27-28). Baptist claims that throughout this period of time he was physically unable to operate a forklift due to the pain in his wrist.

After he left work on June 24, 2012 to see Dr. Heller, Baptist never returned to work. (Def. 56.1 ¶ 29). Baptist did not provide Ford with any additional documentation substantiating his inability to work. Nearly a month later on July 23, 2012, Ford suspended Baptist for one month for excessive absenteeism. (*Id.* ¶ 32). When Baptist returned from his suspension on August 24, 2012, Ford informed Baptist that the only available position for him was his forklift operator position. (*Id.* ¶¶ 33-34). Baptist did not return to work, claiming he was physically unable to perform the job. (*Id.* ¶ 36). Baptist did not provide any additional documentation from a medical provider indicating that Baptist was physically unable to operate a forklift. (*Id.* ¶ 37).

---

[3] Baptist argues that Dr. Heller intended the five pound lifting and gripping restriction to preclude Baptist from operating a forklift and offers. The document that Dr. Heller submitted to Ford at the time, however, makes no such suggestion.

Ford policy requires that employees must furnish sufficient medical documentation to support absences from work or they may be subject to sanctions. (*Id.* ¶ 30).

After Baptist did not work for three days following the end of his suspension for excessive absenteeism, Quandra Speights, a labor representative in Ford's Labor Relations Department, processed Baptist's discharge. (*Id.* ¶¶ 42-43).[4] Pursuant to the collective bargaining agreement that governed the terms of Baptist's employment, employees with Baptist's level of seniority could be discharged after three days of absence without "giving a satisfactory reason for his absence." (*Id.* ¶¶ 40-41). Baptist was terminated as of August 31, 2012 for three consecutive absences without justification on August 24, 25, and 26, 2012. (*Id.* ¶ 44). Speights did not rely on any information other than the absences in making the termination decision, though she was aware that Dr. Lewis had not made a determination that Baptist was unable to perform his duties. (*Id.* ¶45; PSAF ¶ 35). Speights made no independent determination as to whether Baptist was able to operate a forklift. (PSAF ¶ 38). Between Baptist's injury and his eventual discharge, Ford never received documentation from any physician indicating that Baptist was not able to drive a forklift. (Def. 56.1 ¶ 26). Ford's internal policies require that an employee provide sufficient medical documentation to support absences, irrespective of whether the injury occurred at work or on personal time. (*Id.* ¶ 30).

## LEGAL STANDARD

"Summary judgment is appropriate where there is no genuine issue to any material fact and the movant is entitled to judgment as a matter of law." *Orr v. Assurant Employee Benefits*, 786 F.3d 596, 600 (7th Cir. 2015). Whether a fact is material depends on the underlying

---

[4] Baptist did not respond to Paragraphs 42-47 of Ford's statement of undisputed material facts. These facts are "deemed admitted" pursuant to Local Rule 56.1(b)(3)(C); *see also Friend v. Valley View Comnty. Unit School Dist. 365U*, --- F.3d ---, No. 13-3307, 2015 WL 3644015 at *1-2 (7th Cir. June 12, 2015).

4

substantive law that governs the dispute. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). The Court examines the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Castro v. DeVry University, Inc.*, 786 F.3d 559, 563-64 (7th Cir. 2015); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

"In Illinois, it is unlawful to terminate an employee in retaliation for exercising her rights under the [Illinois Worker's Compensation Act]." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citing *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878-79 (Ill. 1981)). The claim of retaliatory discharge based on the filing of a workers' compensation claim is an exception to the "general rule in Illinois . . . that an at-will employee may be discharged at any time and for any reason." *See Grabs v. Safeway*, 917 N.E.2d 122, 126 (Ill. App. Ct. 2009) (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978)); *see also* 820 ILCS 305/4(h). To establish retaliatory discharge under Illinois law, a plaintiff must prove: "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012) (quoting *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)).

"To establish causation, the employee must affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Phillips v. Continental Tire the Americas, LLC*, 743 F.3d 475, 477 (7th Cir. 2014) (internal quotation marks omitted) (alteration in original). The federal "burden-shifting" framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply to retaliation cases brought under Illinois law. *See Gordon*,

5

674 F.3d at 774. "Causation requires more than a discharge in connection with filing a claim." *Phillips*, 743 F.3d. at 477 (quoting *Marin v. Am. Meat Packing Co.*, 562 N.E.2d 282, 286 (Ill. App. Ct. 1990)). A plaintiff "must proffer sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated. Only after [the plaintiff] has met this burden is [the employer] required to provide a legitimate reason for its decision to terminate [him]." *Gordon*, 674 F.3d at 774. (internal quotation marks). "'But-for' causation is not sufficient to establish retaliatory discharge." *Phillips*, 743 F.3d at 478 (citing *Clemons*, 704 N.E.2d at 407-08).

The parties do not dispute that Baptist was employed at Ford before the injury occurred or that Baptist exercised a right under the IWCA. Therefore, the only issue is whether a reasonable jury could find that Baptist has "affirmatively show[n] that the discharge was primarily in relation for [his] exercise of a protected right." *See Phillips*, 743 F.3d at 477. Ford argues that Baptist's discharge was a straightforward application of its rule that employees who are absent without leave for three days can be fired. Baptist seems to have two theories of his case. The first is that his workers' compensation claim triggered a chain of events in which employees of Ford and the firm that handled its workers' compensation benefits processing conspired to discharge Baptist in retaliation for what they viewed as a frivolous claim. Baptist argues that Nawracaj and Dr. Lewis's statements create a genuine issue of triable fact as to Ford's improper motivation such that a reasonable jury could find that his discharge was primarily in retaliation to his workers' compensation claim. Baptist's second theory is that a dispute existed as to the nature, extent, or severity of his injury and ability to return to work and, therefore, Ford was not entitled to rely on his absenteeism as a ground for discharge. In other words, Ford's reliance on Baptist's absenteeism was pretext for an improper motive. Neither

6

argument is sufficient to create a genuine issue of fact that is material to any element of Baptist's claim.

> A. **Baptist has not proffered sufficient evidence from which a reasonable jury could infer that Ford was improperly motivated**

Baptist has not proffered sufficient evidence such that a reasonable jury could infer that Ford was improperly motivated. *See Gordon*, 674 F.3d at 774. Baptist points to Nawracaj and Dr. Lewis's skeptical statements about the veracity of Baptist's claim, which Baptist argues provide "direct evidence of motive." (Dkt. 59 p. 7). Baptist argues that this skepticism infected the Labor Relations department, including Speights, and influenced her to make the decision to fire Baptist based on the workers' compensation claim that Nawracaj and Dr. Lewis believed was meritless. Ford does not dispute that Nawracaj was skeptical of Baptist's claim, nor could it; Nawracaj rejected the bulk of the workers' compensation claim and Baptist and Ford are currently litigating the underlying workers' compensation in the Illinois Workers' Compensation Comission. Instead, Ford argues that whatever skepticism Nawracaj and Dr. Lewis expressed or subjectively held bears no relationship to Ford's decision to terminate Baptist. Ford is correct. Baptist has not pointed to any evidence affirmatively showing that the *filing* of the workers' compensation claim was the primary reason for his eventual discharge. *See Phillips*, 743 F.3d at 477.

Instead, undisputed evidence shows that Ford worked with Baptist for months after he filed a workers' compensation claim in an attempt to get Baptist to return to work. Initially, Ford paid for a doctor visit and, when Dr. Heller indicated that Baptist was authorized to return to work with a brace, welcomed Baptist back. Ford welcomed Baptist back a second time after he left work without authorization to see Dr. Heller and Dr. Heller cleared Baptist to return to work with a five pound lifting and gripping restriction. When Baptist did not return to work, Ford did

7

not immediately fire Baptist for excessive absenteeism even though he had not worked in nearly a month. Ford first suspended Baptist and informed him that he needed to provide a documentation substantiating the need for his absence. A doctor's note indicating that he was physically unable to work would have been sufficient. Baptist provided nothing. Speights spoke with Baptist again after his suspension and attempted to extract any evidence of a legitimate reason for his absence. Baptist produced no new doctor's note, despite the fact that he had seen a doctor, that would have excused him from performing his duties. Nothing in the record suggests that Baptist's workers' compensation claim influenced Speights decision.

That Speights may have been aware of Baptist's pending workers' compensation claim does not create a disputed issue of material fact. Mere awareness of the pendency or rejection of a workers' compensation claim does not support an inference of impermissible motive. *See Ridings v. Riverdale Medical Center*, 537 F.3d 755, 774 (7th Cir. 2008) ("the mere fact that a Risk Services employee discussed the workers' compensation claim with [plaintiff's] supervisor does not create an inference of discrimination"). If the opposite were true, the filing of a workers' compensation claim would impenetrably insulate a worker from discharge and it is clear that this is not the law. *See Clark v. Owens-Brockway Glass Container, Inc.*, 697 N.E.2d 743, 746 (Ill. App. Ct. 1998) ("An employer may discharge an injured employee who has filed a workers' compensation claim as long as the reason for the discharge is wholly unrelated to the employee's claim."); *see also Ridings*, 537 F.3d at 774 (implementation of formal disciplinary procedures in approximately the same time period as protected activity is not necessary indicative of retaliation). Spreights's awareness of Baptist's claim does not create a triable issue.

Baptist's argument that Nawracaj and Dr. Lewis's hostility toward Baptist's claim support the denial of summary judgment on the basis of a "cat's paw" theory of liability also

8

fails. *Cf. Mattews v. Waukesha County*, 759 F.3d 821, 829 (7th Cir. 2014). "In law the law of employment discrimination, the 'cat's paw' theory can apply when a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Id.* (quoting *Smith v. Bray*, 681 F.3d 888, 897 n.3 (7th Cir. 2012)). This argument fails for two reasons. First, Baptist fails to cite, and the Court is not aware, of any case in Illinois or the Seventh Circuit applying the cat's paw theory of liability to relation claims under the IWCA. Indeed, the Court is skeptical that imposing such an analytical structure – a creature of federal law – to a unique state law cause of action would be proper. The Court, for example, does not apply the familiar *McDonnell-Douglas* framework to IWCA cases, despite the fact that the underlying substantive law has a structurally similar federal corollary. *See Gordon*, 674 F.3d at 774. Without instructions to do so from either the Illinois courts or the Seventh Circuit, this Court will not extend the law in this manner.

Notwithstanding the dubious application of a cat's paw theory to the IWCA, the argument also fails on the merits. As discussed above, the record contains no evidence that either Nawracaj or Dr. Lewis provided any input to Speights concerning Baptist's continued employment at Ford. *See Matthews*, 759 F.3d at 829 ("no support for a cat's paw theory" where there were "no facts indicating that [biased subordinate] provided any input to [decision maker] concerning [plaintiff's] application"). To the extent that either Nawracaj or Dr. Lewis communicated with Speights or the labor relations department and mentioned Baptist's claim, the thrust of the comments was the same: Baptist's workers' compensation claim was meritless and Baptist was physically able to work. Whether or not these conclusions were true, they would not allow a reasonable jury to find that the statements influenced or duped Speights. Before making her decision to terminate Baptist for absenteeism, Speights gave Baptist repeated

9

opportunities to provide documentation supporting his physical inability to work. In other words, she did not rely on Dr. Lewis's assessment or Nawracaj's characterization of his claim. *See Smith*, 681 F.2d at 897 (cat's paw theory requires evidence that allegedly duped decision maker "relied" on statements of non-decision maker).

Baptist has failed to provide evidence that would allow a reasonable jury to find that he has affirmatively proven that Ford's decision to terminate him was primarily retaliatory. Ford's motion for summary judgment is granted.

### B.     Ford has demonstrated that it had a valid, nonpretextual basis for discharging Baptist

Because Baptist has not carried his initial burden, Ford need not put forth a valid, nonprextual reason for Baptist's discharge. *See Grabs*, 917 N.E.2d at 296-297 ("an employer [facing an IWCA retaliation claim] is not required to come forward with an explanation for an employee's discharge"). Because they have voluntarily proffered undisputed evidence establishing a valid, nonprextual reason for Baptist's discharge, however, "the causation element required to be proven is not met." *See Grabs*, 917 N.E.2d at 297 (quoting *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)). This evidence provides an independent basis to grant summary judgment in Ford's favor.

Undisputed evidence shows that Speights made her decision to terminate Baptist based on a straightforward application of Ford's three-day quit rule. Baptist does not dispute that he never returned to work after leaving to see Dr. Heller on June 24. No one at Ford had received information from any physician that suggested Baptist was physically unable to perform his duties as a forklift operator. Baptist has not pointed to any evidence in the record that creates a genuine issue of material fact as to Ford's valid, nonpretextual justification for its decision to discharge Baptist. In the absence of conflicting medical evidence, relying on this type of rule is

sufficient to demonstrate a proper purpose. *See Beatty*, 693 F.3d at 753 (affirming grant of summary judgment where plaintiff was absent for three days and defendant's "attendance policy required employees to call in their absences daily and clearly provided that an employee who failed to report or call in for three consecutive days was subject to termination.").

No dispute as to Baptist's physical ability to work prevented Ford from relying on its absenteeism policy to discharge Baptist. Baptist is correct that an employer may not solely rely on an independent medical examiner's opinion that the employee is physically able to work in discharging an employee for excessive absenteeism when the employee's doctor and an independent medical examiner have conflicting opinions about the employee's physical ability to perform. *See Grabs*, 917 N.E.2d at 124. Here, however, no conflicting medical opinions about Baptist's ability to return to work existed at the time Ford discharged Baptist. The letter that Dr. Heller sent to Ford in 2012 cleared Baptist to work subject to a five pound lifting and gripping limitation. The letter explicitly stated that Baptist could return to work subject to its limitations and the letter did not state that Baptist could not drive a forklift. Dr. Lewis, who was familiar with Baptist's job requirements, found that his work assignment did not require him to lift or grip more than five pounds. Save for Baptist's own refusal to return to work, the record contains no evidence of a dispute as to Baptist's physical ability to operate a forklift in 2012.

Dr. Heller's 2014 affidavit stating that he intended his 2012 letter to preclude Baptist from operating a forklift does not affect this conclusion. Dr. Heller's post hoc explanation is insufficient to create a dispute of material fact as to whether Ford was faced with differing medical opinions. Nothing in the record suggests that Ford was presented with any such recommendation in 2012 and was therefore not "faced with" any medical information that suggested Baptist was medically unable to operate a forklift. *See Grabs*, 912 N.E.2d at 124. Dr.

Heller's letter explicitly states that Baptist could "return to work" with the restriction of "no lifting or gripping over 5 lbs with left hand." (Dkt. No. 49-1 p. 44). The letter does not indicate that Baptist could not operate a forklift. The letter did not indicate that Baptist required immediate surgery. Ford gave Baptist multiple opportunities to supplement the medical information he provided to the company and include some information showing he was physically unable to operate a forklift, but Baptist failed to do so. Nothing that Ford was "faced with" in 2012 gave any indication that Baptist was physically unable to perform his duties.

Because Ford was not faced with conflicting medical information concerning Baptist's ability to operate a forklift, Ford was free to discharge Baptist for excessive absenteeism or any reason "unrelated to the employee's claim for benefits under the Workers' Compensation Act." *Clark*, 697 N.E.2d at 746. Ford's application of its three day rule here was not related to Baptist's workers' compensation claim. In other words, Ford has established a valid, nonpretextual reason for discharging Baptist.

## **CONCLUSION**

For the reasons stated herein, Ford's motion for summary judgment is granted. Ford's motion for a protective order and to strike is dismissed as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 8/31/2015