IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BAPTIST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-08974 |
| ) | Hon. Virginia M. Kendall |
| FORD MOTOR COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT FORD MOTOR COMPANY'S
MOTION (WITH SUPPORTING MEMORANDUM)
<u>FOR JUDGMENT AS A MATTER OF LAW</u>**

Defendant Ford Motor Company moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Plaintiff has been fully heard at trial and the jury does not have a legally sufficient evidentiary basis to find for Plaintiff. Specifically, (1) Plaintiff failed to present legally sufficient evidence supporting his request for punitive damages; (2) Plaintiff failed to present legally sufficient evidence that he is entitled to lost-wages damages; (3) Plaintiff failed to present legally sufficient evidence of emotional-distress damages; and (4) Plaintiff failed to present legally sufficient evidence that Ford terminated him because he filed a workers' compensation claim.

**<u>RELEVANT FACTS</u>**

Plaintiff James Baptist has been fully heard at trial, and the evidence—construed in his favor—shows the following.[1] Baptist was hired as an entry-level forklift operator at Ford's Chicago Assembly Plant, and began work on February 27, 2012. The terms of his employment

---

[1] The trial transcript is not yet available. Ford incorporates the transcript and exhibits admitted at trial.

were governed by a Collective Bargaining Agreement between Ford and the United Auto Workers. One of those terms provided that an employee with fewer than six months could be terminated if he or she was absent without leave for three straight days.

On April 10, 2012, while Baptist was driving his forklift at the plant, he clipped a pillar with a crate he was carrying with the forklift. Baptist testified at trial that there was no damage to the forklift, and maybe a scratch or two on the pillar. He was steering the forklift with his left hand open and flat, with the steering wheel's knob under his palm, not wrapped around the steering wheel. But he says that his hand got caught up in the wheel and was injured. Baptist testified that his hand did feel sore, but he was more shaken up than anything. Baptist did not immediately report the injury, and instead kept working, driving the forklift for another 45 minutes until the end of his shift.

Baptist claims that he reported the injury to his supervisor by text message and went to the medical department at the plant, but there was no doctor or medical personnel present. He did not submit a formal accident report until April 18, which triggered a review by Ford's workers' compensation administrator, Jennifer Nawracaj.

On April 24, Baptist went to his personal orthopedic surgeon, Dr. William Heller, who noted evidence of a ligament tear in Baptist's left wrist. Dr. Heller issued Baptist a wrist brace and concluded that Baptist could "continue to perform his regular work duties within the brace." For the next two months, Baptist operated the forklift without incident while wearing his wrist brace.

On June 24, Baptist left work early, supposedly to seek additional medical attention for his wrist. He did not actually see Dr. Heller until two days later, on June 26. Dr. Heller recommended surgery but cleared Baptist to return to work. In a form letter faxed to Ford on

June 29, Dr. Heller checked boxes indicating that Baptist could "return to work with the following restrictions as of 7-2-12": "no lifting over 5 lbs with left hand or gripping." Dr. Heller did not check boxes for the restrictions "one handed work, R L," "sedentary work only," or "temporarily totally disabled."

Baptist, however, did not return to work. On July 23, nearly a month later, Ford suspended Baptist for a month for excessive absenteeism. When his suspension ended on August 24, Baptist reported to the plant. The plant physician, Dr. Patricia Lewis, cleared Baptist to resume his forklift position. She concluded on July 5 that Dr. Heller's five-pound lifting-or-gripping restriction would not prevent Baptist from operating a forklift. Ford informed Baptist that it did not have another work assignment for him and instructed him to return to his forklift position.

Baptist refused and walked out of the plant. He never returned to work at his forklift position. At the time Baptist walked off, he had not worked a day at Ford since June 24, two months earlier. After Baptist was absent without leave for three more days, he was terminated. A labor representative at Ford, Quandra Speights, processed Baptist's discharge effective August 31, 2012, as a "Three-Day Quit" pursuant to the Collective Bargaining Agreement. Ms. Speights relied only on Baptist's attendance records in making the decision to terminate his employment. The UAW did not file a grievance concerning Baptist's termination.

Between his last day of work on June 24 and his termination on August 31, Baptist never provided Ford with a medical opinion that he was physically unable to operate a forklift or had any work restrictions other than a five-pound lifting-and-gripping limitation. Baptist knew not later than July 9 of Dr. Lewis's conclusion that Dr. Heller's work restrictions of June 29 did not

interfere with Baptist's ability to operate the forklift. Baptist did not see Dr. Heller after June 26. Dr. Heller never issued any different or additional work restrictions after June 29.

## **RULE 50(A) STANDARDS**

Federal Rule of Civil Procedure 50(a)(1) provides:

> (a) Judgment as a Matter of Law.
>
> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

The standard of review on a motion for a directed verdict (now called a motion for judgment as a matter of law under Rule 50) is "whether the evidence presented, combined with all the reasonable inferences permissibly drawn therefrom is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). "The court cannot resolve any conflicts in testimony or otherwise weigh and evaluate the evidence; these functions are reserved for the fact finder." *Webb v. City of Chester*, 813 F.2d 824, 828 (7th Cir. 1987). The Court is required to determine "the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without 'speculation over legally unfounded claims.'" *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir 1981) (quoting *Brady v. Southern Railway*, 320 U.S. 476, 480 (1943)). "A legally sufficient amount of evidence need not

4

be overwhelming, but it must be more than a 'mere scintilla.'" *Filipovich v. K & R Exp. Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004).

In short, the Court's "job is to assure that the jury ha[s] a legally sufficient evidentiary basis" to reach a verdict. *Filipovich*, 391 F.3d at 863.

## **ARGUMENT**

### I. PLAINTIFF FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE AS TO PUNITIVE DAMAGES

As this Court noted in its March 27, 2017 order regarding Ford's motions in limine, "[w]hile the measure of punitive damages is a question for the jury, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is one properly of law." (ECF 155 at p. 3; *see Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978): "while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law.") The Court ordered that, to proceed with a claim for punitive damages, "Plaintiff must establish Defendant retaliated 'with fraud, actual malice, deliberate violence or oppression, or acted willfully with such gross negligence as to indicate a wanton disregard of the rights of others.' (*Id.*; quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978)).

Importantly, proof necessary to support the imposition of liability for compensatory damages is not sufficient to support the imposition of liability for punitive damages. *Jackson v. Bunge Corp.*, 40 F.3d 239, 247 (7th Cir. 1994) ("We do not accept Jackson's theory that the issue of punitive damages must be sent to the jury any time that the plaintiff satisfies the formal elements of a retaliatory discharge claim"). "But a court can only award punitive damages if the defendant's misconduct is "above and beyond the conduct needed for the basis of the action." *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 554 (1992). The conduct must involve "some

element of outrage similar to that usually found in a crime." *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990)." *Siegel v. Hershinow*, 2016 WL 5171787, at *3 (N.D.Ill., 2016).

The evidence at trial shows nothing of the sort. Far from allowing submission of a claim for retaliatory discharge, there is no substantial evidence in this record of fraud, actual malice, deliberate violence or oppression, or willful and wanton disregard. At most, the evidence shows a good faith tension between Baptist and Ford in the application of Dr. Heller's five-pound lifting-and-gripping limitation insofar as whether Baptist could not drive a forklift, even though the restriction did not actually say that and even though Ford's experienced doctor concluded that Baptist could drive a forklift. This is not the stuff of punitive damages. Indeed, the only relevant issue here is Ford's motivation for terminating Baptist, and Baptist admits that the Ford decision-maker relied on nothing but his attendance records in making the decision to terminate him. This is not the behavior of someone who is acting in willful and wanton disregard for the rights of others.

Because courts considering retaliation claims hold that "[p]unitive damages should be awarded only where the defendant's misconduct is *above and beyond* the conduct needed to" establish the elements of a retaliation claim. *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 601 (2000), punitive damages are not appropriate where the Plaintiff "allege[s] nothing more than the conduct necessary for the basis of an action in retaliatory discharge." *Id.* This is such a case, even though plaintiff's underlying retaliation claim is also devoid of substantial evidence.

Plaintiff has relied on two cases in support of his request for punitive damages, *Blount v. Stroud*, 395 Ill. App. 3d 8, 22 (2009) and *Hollowell v. Wilder Corp. of Delaware*, 318 Ill. App. 3d 984, 988, 743 N.E.2d 707, 711 (2001). But in both of those cases (which of course are not binding on this Court), there was significant evidence of willful and wanton conduct over and

above the alleged violation giving rise to the lawsuit. In *Blount*, for example, there was evidence that the defendant "threatened [plaintiff] on more than one occasion and . . . attempted to intimidate her with his wealth, power, and connections," and had even "attempted to use his connections to prevent Blount from testifying that she had witnessed racial and sexual harassment." And in *Hollowell*, after the court held that punitive damages can be appropriate in some retaliatory-discharge cases, the court noted that punitive damages were appropriate there because the plaintiff had produced evidence of "harassment and verbal abuse" and that plaintiff was told that the defendant "did not want plaintiff's kind of people working for them." *Hollowell*, 318 Ill. App. at 987.

Again, nothing of the sort happened here. Plaintiff points to some emails that show that Jennifer Nawracaj was highly skeptical that Baptist was injured in the way he described, or that he was candid with her about his claim, but this is just an experienced and overworked workers' compensation administrator doing her job. None of this rises to the level of willful or wanton conduct. The evidence is insufficient as a matter of law to support a punitive damage submission.

**II.  PLAINTIFF FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE THAT HE IS ENTITLED TO LOST-WAGES DAMAGES**

**A.  Mr. Baptist Admitted on the Stand that He Has Been Unable to Perform Manual Labor, Including Driving a Forklift, Since His Injury and Up to the Present Day. He Therefore Has No Compensable Lost Wages.**

As the Court noted on the record on March 30, 2017, if Mr. Baptist was disabled and could not perform his forklift job, then he has no lost-wages damages. Mr. Baptist admitted expressly on the stand at trial that he would not have and could not have returned to his forklift position. Indeed, Baptist testified that he has been physically unable to do manual labor of any kind from the time of the injury up to the present day. Thus, he has no lost-wages damages—by

his own admission, he would not have earned any wages from driving a forklift, so he could not have "lost" any such wages as a result of Ford terminating him.

Specifically, the only question for lost-wages purposes is whether Baptist would have returned to his forklift job, and thereby earned wages from Ford from performing his forklift job. If there is insufficient evidence that Baptist would have returned to his forklift job, then he has suffered no lost wages. This is because, as the Court has repeatedly noted, this is not an ADEA case, so Ford had no duty to reassign Baptist to another position other than his forklift position. The Court stated expressly in its March 27, 2017 order that, under controlling law, "Plaintiff may not, however, suggest that Defendant had an obligation to transfer or reassign him to a different position, as that is not the law in Illinois and that cannot be a factor in damages." (ECF 155 at 2.) Ford was *not* "obligated to reassign such an employee to another position rather than terminate the employment." *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992); *see also id.* ("an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury").

The Court noted in its March 27, 2017 order that "The jury can consider . . . the likelihood that Plaintiff would have continued to work as a forklift driver given his injury and may consider Defendant's right to fire Plaintiff for a non-pretextual reason." (ECF 155 at 3.) "Defendant, of course, is then free to cross examine both Smith and Plaintiff about how much longer Plaintiff would have actually driven a forklift had he not been terminated." (*Id.*) The Court further noted that, "[f]or example, Plaintiff's deposition testimony that as of the date of the deposition, July 15, 2014, he was not looking for "a manual labor job, as I'm a bit older now." (*Id.* n. 3.)

Baptist admitted directly on the stand at trial that he would not and could not have returned to his forklift position. Indeed, Baptist testified that he has been physically unable to do manual labor of any sort, from the time of the injury up to the present day. He explained that he can't open and close his car door, and can't pick up a gallon of paint with his left hand.

These admissions foreclose his claim for lost wages. As the Court has ordered, Baptist may recover lost wages only for the period of time between his termination and May 9, 2016. But Baptist has admitted that he was physically unable to perform his forklift job during that period. He therefore has suffered no lost wages during that period—by his own admissions, he would not have earned any wages from driving a forklift during this time, so he has not "lost" them as a result of alleged retaliatory discharge.

**B. Lost Wages are Recoverable in the Workers' Compensation System, and Therefore are Not Recoverable Here in a Retaliatory-Discharge Lawsuit**

The Illinois Court of Appeals' decision in *Dale v. South Central Illinois Mass Transit Dist.*, 17 N.E.3d 229 (Ill. App. 2014) squarely forecloses Plaintiff's claim for lost-wages damages. Simply put, lost wages are recoverable in the workers' compensation system, and thus Plaintiff's exclusive remedy for those alleged damages lies there, not here in federal court in a retaliatory-discharge suit.

In *Dale*, the Illinois Court of Appeals expressly "h[e]ld that the employee's damages for lost wages fall within the exclusivity provisions of the [Worker's Compensation] Act." *Id.* at 233. This is because the "Act provides the 'exclusive remedy' for an injured employee seeking to recover damages from an employer that are causally related to an on-the-job injury"; "[e]ssentially, these sections of the Act require 'exclusive resort' to the worker's compensation remedy for injuries arising out of the course of employment." *Id.* at 233, 235 (internal quotation omitted). And "lost wages that are causally connected to a work-related injury are *certainly*

9

recoverable under the Act"—"the statutory scheme of the Act provides injured worker with wage benefits when they are unable to work due to an injury that is causally related to a workplace accident, including temporary total disability benefits and total disability benefits." *Id.* at 235 (citing 820 ILCS 305/8 (West 2010)) (emphasis added).

In short, because lost wages are recoverable under the Worker's Compensation Act, an "employee's claim for lost wages must be recovered under the Act, not in a civil lawsuit for retaliatory discharge." *Dale*, 17 N.E.3d at 235. "Allowing an employee to maintain a civil action for lost wages . . . would improperly frustrate the purpose of the Act's statutory scheme, which is to provide a system of imposing liability on employers without fault for accidental work-related injuries and, in return, prohibiting common law suits by employees against the employer." *Id.*

For all these reasons, the Court should grant judgment as a matter of law to Ford on Plaintiff's claim for lost-wages damages.

### III. PLAINTIFF FAILED TO PRODUCE LEGALLY SUFFICIENT EVIDENCE OF EMOTIONAL DISTRESS DAMAGES

The only testimony Baptist provided at trial regarding his emotional distress was that his feelings were hurt and he felt a loss of dignity and resentment from losing his job and being unemployed. He testified that his wrist injury has taken him away from his life and career.

But first, whether Baptist has suffered emotional distress *arising from his wrist injury* is not relevant. This is not a personal injury claim or a workers' compensation claim. Only emotional distress *arising from the alleged unlawful retaliation* could be relevant. Baptist admitted on the stand that it is his *wrist injury* that has caused his emotional distress, and this is not recoverable in this retaliation lawsuit.

Second, general statements about hurt feelings, loss of dignity, and resentment from losing a job are not sufficient to support emotional distress damages under controlling law. A plaintiff must show "demonstrable emotional distress," not just circumstances that could lead to the inference of distress, and a plaintiff has to do more than testify he was "depressed," "a little despondent," "completely humiliated," or "highly upset." *See Nekolny v. Painter*, 653 F.2d 1164, 1172–73 (7th Cir. 1981) ("The only evidence of injury contained in this record was Nekolny's testimony that on learning he was terminated he was 'very depressed,' Dahms' statement that she was at one point subsequent to leaving her job 'a little despondent and (lacking) motivation,' and Dumas' testimony, on being asked whether he looked for employment after losing his job, 'Well, I didn't work for six weeks, I was completely humiliated, and I stayed close to home.' That evidence is insufficient to constitute proof of compensable mental or emotional injury."); *Biggs v. Vill. of Dupo*, 892 F.2d 1298, 1304–05 (7th Cir. 1990); *Lawyer v. 84 Lumber Co.*, 991 F. Supp. 973, 976 (N.D. Ill. 1997).

## IV. PLAINTIFF FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE THAT FORD TERMINATED HIM BECAUSE HE FILED A WORKERS' COMPENSATION CLAIM

### A. Baptist was Required to Present a Legally Sufficient Evidentiary Basis for a Jury to Find that Retaliation was the Proximate Cause of his Termination

A retaliatory-discharge cause of action is a "narrow" and "limited" one. *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012). The plaintiff must show that he was terminated "*because of* his actual or anticipated exercise of workers' compensation rights." *Id.* (quoting *Zimmerman v. Bucheit of Sparta, Inc.*, 645 N.E.2d 877, 881, 884 (Ill. 1994); citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978); *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992)). "To prevail on a claim of retaliatory discharge, the plaintiff has the burden of proving three elements: '(1) that he was an employee before the injury; (2) that he exercised a

11

right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Beatty*, 693 F.3d at 753 (7th Cir. 2012) (quoting *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)).

For the causation element, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Clemons*, 704 N.E.2d at 406. To establish causation, a plaintiff must do more than show he filed a workers' compensation claim and was thereafter discharged: "Causation requires more than a discharge in connection with filing a claim," and "'[b]ut-for' causation is not sufficient[.]" *Phillips v. Cont'l Tire the Americas*, 743 F.3d 475, 477 (7th Cir. 2014). Indeed, Illinois law has expressly rejected "but-for" causation, and has expressly rejected the argument that a defendant can be liable even if it had a legitimate reason for the discharge because "there can be more than one proximate cause." *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1190 (Ill. 2014). "It's not enough for the plaintiff to establish that his workplace injury and initiation of a workers' compensation claim set in motion a chain of events that ended in his discharge." *Hillmann v. City of Chicago*, 834 F.3d 787, 794 (7th Cir. 2016). "That is, but-for causation is necessary but not sufficient to prove the causation element of a retaliatory-discharge claim." *Id.*; *see also Casanova v. Am. Airlines, Inc.*, 616 F.3d 695, 698 (7th Cir. 2010) (holding that Illinois decisions had "rejected an argument that but-for causation is enough to establish retaliatory discharge" and "reject[ed] the argument that a fired worker can establish causation by showing that a workers' compensation claim set in motion a chain of events that ended in discharge"); *Gordon*, 674 F.3d at 774 ("to establish a causal relationship, Gordon must affirmatively show that the discharge was primarily in retaliation for [her] exercise of a protected right") (internal quotation omitted); *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.

1994) ("The plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right").

Instead, the plaintiff "must affirmatively show that the discharge was primarily in retaliation" for filing the claim. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (quotation omitted). To meet this burden, the plaintiff "must proffer[] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated." *Id.* (citations omitted). Even then, the claim still fails if the employer "provide[s] a legitimate reason for its decision to terminate [the plaintiff]." *Id.* "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *McCoy v. Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007) (quotations omitted).

This is a very limited claim. As the Illinois Supreme Court has explained, "Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position; nor is an employer obligated to reassign such an employee to another position rather than terminate the employment." *Hartlein*, 601 N.E.2d at 728. This is true even if the reason the employee is unable to return to work is a job-related injury: "an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." *Id.* "Simply put, Illinois law allows employers to act on the basis of their employee's physical disabilities; it is only the request for benefits that state law puts off limits as a ground of decision." *Id.*; *see also Cochrum v. Old Ben Coal Co.*, 678 N.E.2d 1093, 1099 (Ill. App. 5th Dist. 1997) ("an employer need not retain an at-will employee who is medically unable to return to his assigned position").

13

## B. Baptist Failed to Present a Legally Sufficient Evidentiary Basis for a Jury to Find that Retaliation was the Proximate Cause of his Termination

Here, Baptist failed to present a legally sufficient evidentiary basis for a jury to find that Ford terminated him because of his filing a claim under the Workers' Compensation Act. Ford terminated Baptist's employment because Baptist failed to report to work on and after August 24, 2012, not in retaliation for requesting workers' compensation benefits in April of that year. Baptist admitted on the stand that he never returned to his forklift position at any time after June 24, 2012, two months before his discharge. He admitted that he understood that Ford's plant doctor, Dr. Lewis, did not view the five-pound lifting-and-gripping limitation as an impediment to performing his job as a forklift operator. He admitted that he knew Dr. Lewis's position on July 9, 2012—six weeks before his termination—and yet he still did not secure any documentation expressing a medical opinion that he could not drive a forklift, even though he understood that was what was required. He admitted that the medical documentation he submitted to Ford did not express a medical opinion that he could not operate a forklift; that he had over two months to submit medical documentation to that effect; and that he never submitted this documentation. This is not causality under any standard.

On top of all of that, Baptist did not dispute any of Ford's Statement of Material Facts paragraphs 40-47 relating to the reasons for his discharge, and under Local Rule 56.1(b)(3)(C), these facts are therefore "deemed admitted." Among those admissions was that Ford's labor-relations representative who processed his termination "did not rely on anything other than Baptist's attendance records in making the decision to terminate him." (SA 7, ¶ 46, SA 213.)

*Beatty* is on point. There, the Seventh Circuit affirmed the grant of summary judgment on a retaliatory-discharge claim where an employee failed to show up to work. 693 F.3d at 751. The employee claimed his absence should have been excused because he had suffered a

workplace injury. *Id.* The case "present[ed] a straightforward question of causation: Did [the plaintiff's] possible pursuit of a workers' compensation claim prompt [the employer] to fire him?" *Id.* The Court held there was no genuine dispute on that question. The employer had a policy that employees had to call in to report their absences, and it was undisputed that the plaintiff had failed to do so. "The undisputed evidence thus points in only one direction: [the employer's director of labor relations] fired [the plaintiff] based on his noncompliance with [the employer's] attendance policy, not in retaliation for his anticipated exercise of his workers' compensation rights." *Id.* at 755-76; *see also Williams v. Office of Chief Judge of Cook Cty. Illinois*, 839 F.3d 617, 622-23 (7th Cir. 2016) ("We see a critical difference between *Grabs* and this case. In *Grabs*, a decision-maker acted improperly on the knowledge of the disputed IME by recoding the plaintiff's work status in the attendance system. That improper act caused the plaintiff's termination. There is no evidence here that Golden acted with knowledge that Williams disputed her return to work date. In fact, Golden testified she had no idea Williams believed her return to work date was September 6. From Golden's vantage point, Williams simply decided not to return to work.").

The undisputed evidence points the same direction here: Ford's labor-relations representative terminated Baptist for his noncompliance with Ford's labor union attendance policy, not in retaliation for exercise of his workers' compensation rights.

For all of these reasons, Ford respectfully requests that the Court grant judgment as a matter of law to Ford under Rule 50(a).

15

Dated: March 31, 2017

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: Timothy S. Millman
    Timothy S. Millman N.D. Ill #44398
    Nicholas L DiVita N.D. Ill. #37514
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone: (816) 561-7007
    Facsimile: (816) 561-1888
    Email: tmillman@berkowitzoliver.com
           ndivita@berkowitzoliver.com

    -and-

    Karen Kies DeGrand, ARDC #6191140
    Donohue Brown Mathewson & Smyth LLC
    140 South Dearborn Street, Suite 800
    Chicago, Illinois 60603
    Telephone: (312) 422-0910
    Facsimile: (312) 422-0909
    Email: karen.degrand@dbmslaw.com

***Attorneys for Defendant Ford Motor Co.***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 31st day of March 2017, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which provided electronic service upon:

      Kent D. Sinson
      Sinson Law Group
      205 W. Wacker Drive
      Suite 1600
      Chicago, Illinois 60606
      kent@sinsonlawgroup.com

      Joanna C. Fryer
      5555 N. Sheridan
      #241
      Chicago, Illinois 60640
      773-386-6958
      Joanna.Fryer@rcn.com

      *Attorneys for Plaintiff*

      /s/ Timothy S. Millman
      *Attorney for Defendant*